UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY LYNN CAMPBELL,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Commissioner<br>of Social Security Administration,<br>                    Defendant. | NO.  2:13-cv-03112-SAB<br><br>**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 15, and Defendant's Motion for Summary Judgment. ECF No. 18. The motions were heard without oral argument.

**I.      Jurisdiction**

On March 26, 2010, Plaintiff filed a supplemental security income ("SSI") application. Plaintiff alleged she is disabled, beginning June 10, 2008, due to chronic lower back pain, anxiety and depression among other conditions.

Her application was denied initially on December 10, 2010 and again denied on reconsideration on February 28, 2011. A request for a hearing was made on May 19, 2011. On March 26, 2012, Plaintiff appeared at a hearing in Yakima, Washington before Administrative Law Judge ("ALJ") James W. Sherry.

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Vocational expert ("VE") Trevor Duncan also participated. Plaintiff was represented by attorney Jeremy D. Wallace. James Tree represents Plaintiff at this Court.

The ALJ issued a decision on April 20, 2012 finding that Plaintiff was not disabled. Plaintiff requested review by the Appeals Council, which was denied. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h).

Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on October 15, 2013. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II.   Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step One: Whether the claimant is engaged in substantial gainful activities. 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 416.972(a); *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990).  If the claimant is engaged

ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

in substantial activity, benefits are denied. 20 C.F.R. § 416.971. If she is not, the ALJ proceeds to step two.

Step Two: Whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 416.909. If the impairment is severe, the evaluation proceeds to the third step.

Step Three: Whether the claimant's impairment meets or equals one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step Four, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

Step Four: Whether the impairment prevents the claimant from performing work she has performed in the past. 20 C.F.R. § 416.920(f).  If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step Five: Whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or

mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**III.   Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). But "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**IV.   Statement of Facts**

The facts have been presented in the administrative transcript and the ALJ's decision. They will only be summarized here.

///
///

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

At the time of the hearing, Plaintiff was forty-three years old. Plaintiff has previous work experience including operating an in-home daycare, working at a community college, and bartending. She has not worked since 2005.

Plaintiff was in a motor vehicle accident in 1999 and a bicycle accident in 2009. She reports frequent anxiety and has trouble going out in public or interacting with other people. Plaintiff reports she was physically, sexually, and emotionally abused by her parents. She also reports sexual abuse from partners. Plaintiff has been diagnosed with degenerative disc disease, hypothyroidism, hepatitis C, and recurrent headaches. She has also been diagnosed with depression, post-traumatic stress disorder delayed onset, generalized anxiety disorder, and panic disorder with agoraphobia. Plaintiff has a history of polysubstance dependence including methamphetamine and cocaine use. She received inpatient and outpatient treatment for substance abuse in 2000, she now reports being able to stay clean and sober.

## V.    The ALJ's findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 26, 2010, the alleged onset date. (Tr. 30.)

At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease; hypothyroidism; hepatitis C; history of recurrent headaches; depression; post-traumatic stress disorder; generalized anxiety disorder; panic disorder with agoraphobia; psychotic disorder (not otherwise specified); schizoid and avoidant personality traits; and history of polysubstance abuse and dependence, in remission. (Tr. 30.)

At step three, the ALJ found that Plaintiff's impairments or combination of impairments does not meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 31.)

The ALJ concluded that Plaintiff has the following residual functional capacity ("RFC"):

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

The claimant is able to lift up to 20 pounds at a time, and can frequently lift or carry 10 pounds. She can stand and/or walk for a total of 6 hours in an 8-hour workday, and can sit for a total of 6 hours in an 8-hour workday. Pushing and pulling are unlimited within the aforementioned lift and carry restrictions. The claimant can occasionally stop, crouch, kneel, and climb ladders, ropes and scaffolds. She can frequently crawl and climb ramps and stairs. She should avoid concentrated exposure to excessive noise, excessive vibration, hazards such as unprotected heights and moving machinery, poorly ventilated areas, and irritants such as fumes, odors, dusts, and gases. She is capable of performing simple, routine, repetitive tasks, as well as well learned non-complex tasks. She is capable of low-stress jobs that require occasional decisionmaking, and can adjust to occasional changes in the work setting. She would need more time to learn new work processes and procedures. She should not work with fast-paced production requirements. She would work best away from the general public. She is capable of superficial interaction with coworkers in small-group settings, and superficial interaction with supervisors. (Tr. 32-33).

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work. (Tr. 41.)

At step five, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 41.) The ALJ relied on the Medical-Vocational Guidelines and found that Plaintiff could perform light work with additional limitations. Such restrictions would still allow Plaintiff to perform the job of office cleaner, mail clerk, and hand packager. As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 26, 2010.

**VI.    Issues for Review**

1.      Did the ALJ commit reversible error by disregarding the opinions of the Claimant's treating and examining physicians?

2.      Did the ALJ commit reversible error by dismissing the Claimant's subjective complaints as not credible?

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

3.      Was the ALJ's finding at step five, disregarding the opinion of the vocational expert, supported by substantial evidence?

**VII.   Discussion**

**1.      ALJ's weighing of evidence from treating and examining physicians**

Plaintiff argues the ALJ committed reversible error for failing to take into account the opinions of several treating and examining physicians. Specifically, Plaintiff contends the ALJ errantly gave too little weight to the opinions of Drs. Roland Dougherty, Marie Ho, and Fady Sabry, and of Dick Moen and Christopher Clark.  An uncontradicted opinion from an examining physician must be accepted by an ALJ unless he provides clear and convincing reasons to reject the opinion. *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d. 821, 830-31 (9th Cir. 1995). A contradicted opinion of an examining doctor may only be rejected for "specific and legitimate reasons." *Id.*

a.  Dr. Dougherty

Plaintiff claims the ALJ "largely dismissed parts of Dr. Dougherty's psychological examination" from October 2010. Plaintiff objects to the ALJ's treatment of Dougherty's opinion in three specific ways. First, the ALJ found the Global Assessment of Functioning ("GAF") score of forty that Dougherty assigned to Plaintiff was "not consistent" with Plaintiff's functional capacity and was based on factors that were not probative of mental residual functional capacity. Therefore, the ALJ assigned little weight to the GAF score. Second, Plaintiff complains that the ALJ noted Dougherty's observation that Plaintiff "may be mildly exaggerating her symptoms" but failed to note Dougherty also described Plaintiff as "not obviously malingering." Third, Plaintiff disputes the ALJ's description of Dougherty's medical source statement as "somewhat vague."

Plaintiff argues the ALJ's assessment of Dougherty's GAF score was in error because Dougherty simply did not specifically say what factors played a role in the GAF score. Plaintiff is correct that Dougherty did not indicate the factors that determined Plaintiff's GAF score, however, the ALJ's assignment of little weight to the score does not constitute reversible error. Plaintiff has been assigned at least three other GAF scores over a two-year period including scores of 43, 50, and 60. Because Dougherty did not expand on the factors he relied upon in determining the GAF score, it is impossible to know—and reasonable for the ALJ to assume—the score may reflect factors irrelevant to a disability determination. *See* 65 Fed. Reg. 50,746 (Aug. 21, 2000); *Doney v. Astrue*, 485 Fed.Appx. 163 (9th Cir. 2012); *McFarland v. Astrue*, 228 Fed.Appx. 357, 359 (9th Cir. 2008). Additionally, ALJ gave reasons for rejecting the contradicted GAF score while assigning more weight to parts of Dougherty's opinion that had a more direct link to a disability determination. The ALJ's assignment of little weight to Dougherty's GAF assessment of Plaintiff was not error.

Next, Plaintiff complains that ALJ noted Dougherty's observation that she may have been "mildly exaggerating her symptoms" but did not note that Dougherty also described her as "not obviously malingering." These two descriptions, however, are not mutually exclusive. Furthermore, the ALJ simply used the description as one of several reasons to assign Dougherty's assigned GAF score little weight. As previously explained, the ALJ's consideration of the GAF score was not reversible error. Correspondingly, the ALJ's failure to mention every line of Dougherty's opinion in rejecting the GAF score is also not reversible error.

Plaintiff also complains that the ALJ described Dougherty's medical source statement as "somewhat vague" despite the lengthy report that preceded it. Plaintiff misunderstands the role and significance of medical source statements. A medical source statement is "[a] statement about what [a claimant] can still do

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT;**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

despite . . . impairment(s)." 20 CFR 404.1513(b). This statement is an opinion submitted by a medical source based on that source's own medical findings. Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996). In Dougherty's case, his report consisted of eight pages, the majority a history as given by Plaintiff. The report concludes with a paragraph explicitly labeled "Medical Source Statement." The statement reads:

> Mrs. Campbell was pleasant and cooperative with me. Her social skills appear to be fair. She reported being able to run a daycare for 10 years and did well at a work study program in college despite her chronic disorders. She should be able to understand, recall, and follow simple directions. Her abilities might improve with appropriate medication. Tr. 246.

Only the latter two sentences in the statement can reasonably be described as forward-looking and describing what the claimant can still do despite her impairments. Dougherty's two prospective sentences include little detail and both include qualifiers rendering the sentences near meaningless. Plaintiff's suggestion that Dougherty included other relevant information is noted, however, it appears it was all self-reported. Medical source statements are particularly relevant to ALJ determinations because they are the opinion of an accepted medical source rather than merely a regurgitation of self-reported ailments. The ALJ's assignment of Dougherty's medical source statement "some weight" due to it being "somewhat vague" and failing to give "a specific assessment of the claimant's social limitations" was based on substantial evidence and does not constitute legal error.

b. Dr. Ho

Plaintiff contends the ALJ's assignment of Dr. Ho's opinion "some weight" was error. Plaintiff complains that the ALJ disregarded Ho's opinion by mistakenly claiming Ho did not take into account Plaintiff's activities of daily living ("ADLs"), and for dismissing Ho's mental limitation statement as "vague and speculative." The ALJ also provided an additional reason for giving Ho's

opinion some weight: Ho did not have an opportunity to review the whole record—a record that conflicted with Ho's finding that Plaintiff had decreased sensation in her hands.

Plaintiff is correct that Ho had knowledge of many—though not all of—Plaintiff's ADLs. However, the ADLs that Ho did not indicate in her opinion are also the ADLs that most suggest a higher functional level, such as cycling for exercise and taking care of her mother.

Next, Plaintiff complains that the ALJ's description of Ho's conclusion regarding Plaintiff's mental limitations was "vague and speculative." Ho's statement was "History of anxiety/depression, agoraphobia, panic disorder, and posttraumatic stress disorder may limit her ability to function in the workplace." Tr. 258. That Plaintiff's history "may" limit her ability to function in the workplace in some unnamed manner is undoubtedly vague. Additionally, the ALJ did not disagree with that statement in determining the Plaintiff's residual functioning capacity. In sum, the ALJ's treatment of Dr. Ho's medical opinion was reasonable, based on substantial evidence, and he did not commit reversible error.

c. <u>Dr. Sabry</u>

Plaintiff further argues that Dr. Sabry's opinion merited more than the "little weight" the ALJ assigned. The ALJ gave little weight to Sabry's opinion because the opinion was self-contradictory. Sabry diagnosed Plaintiff with neuropathy and had gross or fine motor skill restrictions despite finding she had grossly normal motor skills and sensory skills. Notes from a treating or examining doctor that are self-contradictory provide a clear and convincing reason for an ALJ to reject even an otherwise-uncontradicted opinion. *Bayliss v. Barnhart*, 427 F. 3d 1211, 1216 (9th Cir. 2005). The ALJ's treatment of Dr. Sabry's opinion was appropriate and based on substantial evidence.

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

d. <u>Dick Moen, MSW</u>

The ALJ gave Moen's second opinion—from February 2010—little weight because his opinion was not tied to the mental status exam performed, he based his opinion largely on Plaintiff's self-reporting, and he did not consider Plaintiff's history of drug abuse. Plaintiff complains this treatment of Moen's opinion was improper because the ALJ did not provide examples of disparities between the mental status exam and Moen's opinion. The ALJ did not, in fact, explain how the opinion and exam conflicted or how Moen should have tied the two together. This would be problematic if this had been the only reason the ALJ provided in assigning Moen's opinion little weight, however, the ALJ provided several other legitimate reasons for his treatment of Moen's opinion. The ALJ explains that Moen did not consider Plaintiff's history of drug abuse, that Moen's opinion was vague, and that his medical source statement only described Plaintiff as capable of "crying, writing." Tr. 39. These additional reasons, particularly Moen's insufficient medical source statement, provide substantial legitimate reasons for the ALJ's assignment of Moen's opinion little weight.

e. <u>Christopher Clark</u>

Lastly, Plaintiff argues the ALJ should have given Christopher Clark's evaluation and mental status exam more weight.  The ALJ assigned little weight to Clark's first opinion saying it was incomplete, that the mental status exam was not tied to his opinion, that the opinion was based mostly on self-reporting, and that the opinion was inconsistent with Plaintiff's daily activities. Tr. 39. Plaintiff is correct that Clark's first opinion does appear complete and the ALJ's proffered explanation for this point is inadequate. The ALJ describes Clark's opinion as incomplete because Clark provided a written assessment of Plaintiff's remote memory rather than using one of the check-boxes provided. Clark's opinion was not incomplete. However, the ALJ provided other, more compelling, justifications in assigning Clark's opinion little weight, namely that it contradicted with the

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT;
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

Plaintiff's activities of daily life. Because the ALJ is granted deference in sorting through contradicting records, his treatment of Clark's first assessment was proper, even though each of the ALJ's given reasons was not individually sufficient.

The ALJ gave Clark's second opinion little weight because his opinion was based largely on Plaintiff's self-reporting and because his assessment was based partially on the "specter of undiagnosed and untreated lupus" and the fact that Plaintiff had not held a job in the previous six years. Tr. 40. The ALJ deemed that Clark, a licensed mental health counselor, was not properly situated to incorporate an undiagnosed condition into Plaintiff's assessment. An ALJ need not give meaningful weight to an opinion that is out of the examiner's scope of specialization. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001). Additionally, Clark's reliance on Plaintiff's history of failing to maintain a job is far less compelling when Clark did not consider Plaintiff's prior drug abuse problems as a possible contributor to her failure to maintain employment. In sum, the ALJ's interpretation of Clark's two opinions were supported by substantial evidence and he did not commit harmful error.

Ultimately, the ALJ had to weigh fifteen different medical assessments that often reached drastically different conclusions. The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinions that he assigned less weight to. Therefore, the ALJ reasonably weighed the medical opinion evidence and did not commit harmful error.

### 2.    ALJ's determination that Plaintiff lacked credibility

The ALJ determined that some of Plaintiff's alleged symptoms were consistent with the medical evidence but that some of her symptoms were not credible. The ALJ gave several reasons for finding a lack of credibility. These included: inconsistent reports of hallucinations and delusions without seeking follow-up mental health treatment; discrepancies in Plaintiff's reporting of alcohol use and abuse; failure to follow-up with Suzanne Rodriguez, MSW after such a

recommendation was made; and that her alleged symptoms are inconsistent with some of her described daily activities.

In determining whether a claimant's testimony regarding symptoms is credible, an ALJ must first determine if the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably cause the symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). If there is no evidence of malingering, the ALJ can only reject the claimant's testimony about her symptoms by "offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation omitted).

In this case, the ALJ determined that some of Plaintiff's medically determinable impairments could reasonably cause some of the alleged symptoms. Tr. 33. Although the record contains some limited suggestions of malingering, the ALJ did not make any specific finding regarding malingering. The ALJ also found several specific, clear and convincing reasons for not fully accepting Plaintiff's symptoms as she described them in her testimony.

First, the ALJ found Plaintiff's daily activities were inconsistent with her alleged symptoms. Tr. 37. Inconsistencies between testimony and daily activities are grounds for discrediting Plaintiff's testimony, even if the activities suggest some disability functioning. *Molina v. Astrue*, 674 F. 3d 1104, 1112-13 (9th Cir. 2012). The ALJ notes that Plaintiff's ability to cook, do chores like dishes and laundry, and maintain her own budget is inconsistent with her allegations of disabling limitations. Tr. 37. Additionally, Plaintiff was able to take care of her mother and, at least in 2009, cycled for exercise. The ALJ reasonably found these activities to be inconsistent with the complete range of alleged symptoms.

Second, the ALJ found that Plaintiff had made several statements to treating doctors that were inconsistent with either her testimony or statements to other doctors. An ALJ may use ordinary techniques of determining a claimant's credibility, such as considering prior inconsistent statements. *Fair v. Bowen*, 885

F.2d 597, 604 n.5 (9th Cir. 1989). Here, the ALJ describes several discrepancies in Plaintiff's reported alcohol use, medication use, and psychotic symptoms. Tr. 31, 34. The ALJ also noted that two doctors had expressed some belief that Plaintiff may exaggerate symptoms. Tr. 35. These inconsistencies represent a specific, clear, and convincing reason to not fully accept Plaintiff's alleged symptoms.

Third, the ALJ found that Plaintiff's frequent failure to seek treatment or follow recommended treatment decreased Plaintiff's credibility as to alleged symptoms. Tr. 34-37. An unexplained, or inadequately explained, failure to follow a prescribed course of treatment or failure to seek treatment altogether constitutes a form of evidence that can contribute to finding a Plaintiff not credible. *Fair*, 885 F.2d at 603. The ALJ noted several instances where Plaintiff failed to seek follow-up treatment recommended to her, such as by Dr. Sabry (Tr. 36.) and Ms. Rodriguez. Tr. 34. Plaintiff argues any failure in seeking treatment was due to her lack of insurance or other ability to pay for such treatment. The ALJ, however, noted that Plaintiff did not seek mental-health treatment either through emergency room or low-cost clinic options. Tr. 34. Plaintiff cites *Gamble v. Chater*, for the proposition that disability benefits cannot be denied on the basis that a claimant did not obtain treatment she could not obtain due to lack of funds. 68 F.3d 319, 321 (9th Cir. 1995). *Gamble*, however, involved the determination of whether a claimant was disabled due to being unable to afford a prosthesis. Here, the ALJ instead uses the fact that Plaintiff did not attempt to seek any low-cost treatment as one of several factors in finding that Plaintiff was not fully credible as to all of her alleged symptoms. Although Plaintiff's failure to seek follow-up mental health treatment is not as compelling a reason to find the claimant not credible as inconsistencies in the record of Plaintiff's statements, and the conflict between the alleged symptoms and Plaintiff's daily activities, it was not harmful error for the ALJ to consider failure to seek treatment in his credibility determination.

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

The ALJ properly provided specific, clear, and convincing reasons for finding the Plaintiff not fully credible with regard to her alleged symptoms.

### 3. **Disregarding part of the vocational expert's testimony**

Plaintiff contends the ALJ committed harmful reversible error by disregarding the opinion of the vocational expert that Plaintiff could not sustain employment. The ALJ asked the vocational expert: "[w]ould a person with the limitations that [Plaintiff] described be able to perform competitive employment on a regular and continuous basis?" Tr. 93. The vocational expert replied: "[a]s the claimant described, no, your honor." *Id.* Plaintiff argues that the ALJ's failure to consider this opinion was error.

The VE opinion that Plaintiff fixates on is the opinion based solely on Plaintiff's self-described symptoms. As previously discussed, the ALJ properly discounted some of Plaintiff's alleged symptoms as being not credible. Therefore, the ALJ need not accept the VE's answer to a hypothetical based on those same symptoms the ALJ already rejected. The ALJ posed other hypotheticals to the VE, including one that matches the residual functioning capacity the ALJ assigned to Plaintiff in his opinion. Tr. 31-32, 90-91. Accordingly, the ALJ did not commit harmful reversible error by disregarding the hypothetical based on Plaintiff's self-described symptoms.

## VIII. Conclusion

The ALJ's determination was based upon substantial evidence in the record. The extensive record contained medical opinions from fifteen sources and contained conflicting information. The ALJ provided proper and appropriate reason for balancing the various opinions. Additionally, the ALJ provided specific, clear, and convincing reasons for not finding all of the claimant's self-described symptoms to be credible. Based on his appropriate credibility determination, the ALJ properly disregarded a hypothetical based on the self-described symptoms. In

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT;
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

sum, the ALJ's determination was based on substantial evidence and was well within the scope of deference which this Court must accord the ALJ.

Accordingly**, IT IS HEREBY ORDERED:**

1.   Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

3. The decision of the Commissioner denying benefits is **affirmed.**

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 16th day of January 2015



Stanley A. Bastian
United States District Judge

**ORDER DENYING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**